## RANSOM *v.* TURLEY.

PROMISSORY NOTE.—*Note Made as. Collateral.*—A. and B. made their joint and several negotiable note to C. The note was assigned to D. without indorsement. Suit by D. against B. on the note. The evidence showed that B. signed the note at the request of E., knowing that E. would deposit the note with D. as collateral security for money borrowed by E. of D. Afterward D. informed B. that the parties wished him to buy the note, and B. told D. not to buy it, that he only signed it " as surety for a pledge," and for D. to make his money out of A.

*Held,* that the evidence entitled D. to recover of B.

From the Harrison Circuit Court.

*Slaughter & Jordon,* and *A. Stephens,* for appellant.

*S. K. Wolfe,* for appellee.

BIDDLE, J.—The appellee brought suit against the appellant, on a negotiable note, joint and several, made by the appellant and Howard M. Ott, payable to the order of L. M. Jones, and assigned to the appellee without indorsement. Jones was made a party defendant, to answer as to his interest. Answers were filed and issues joined, which need not be particularly noticed, as no question was raised upon them of which the appellant can complain. Trial and finding by the court, judgment against the appellant, exceptions, and appeal.

The only question properly raised in the record is as to the sufficiency of the evidence to sustain the finding.

The appellant testified as follows:

" I am a defendant in this suit ; I signed the note in plaintiff's complaint mentioned, in the last week in June, 1870 ; I signed the note under these circumstances : Mr. Brockaway was in business in Palmyra ; he came into my store one morning and asked me to loan him one hundred dollars ; I told him I was building, and needed money, and asked to be excused ; Brockaway then drew out this note, and said he would deposit it as security if I would let him have one hundred dollars ; he said there was one hundred and sixty-six dollars yet due on it ; I looked at the note and saw the indorsements on it ;

VOL. L.—18

found that was correct; he then asked me where he could get it; I told him he could probably get the money of Mr. Turley (the plaintiff); he stepped out, and was gone probably half an hour, and came back and said: ' Ransom, Turley says I can have the money if I will deposit this note with him as collateral security, you signing the note.' Then I agreed to sign and did sign it for that purpose, that it was to be deposited as a pledge for one hundred ·dollars, and I signed it no other way; Mr. Brockaway then went out, and came back in about an hour with Mr. Turley; Mr. Turley came to my desk and said, ' Ransom, please count that money;' and he asked if that was one hundred dollars; I counted it, and told him it was; Brockaway took the money, and Turley asked him if it was all right, and he said it was; Brockaway then said to me, ' Is that all right?' and I said it was; in a week or ten days afterwards, the plaintiff, Turley, came into my store and said, ' Dick, those fellows want to sell me that note;' said I, ' Don't buy it; I only signed it as a surety for a pledge;' said I, ' Ott is back from Kentucky; you go make your money.' Turley said nothing, and I heard nothing further until after suit was brought on the note, and then, one Sunday, I saw Turley on Brown's porch, in Palmyra; he was talking about the note, and I stopped him; I said to him, ' I told you not to buy that note; I told you I only signed it to secure a pledge for one hundred dollars;' ' I know you did, Dick, but it is a plain note of hand, and all the devils in hell can't get your name off.' I had another conversation with Turley, at his house, after this; this was on Sunday morning; I asked him if he had brought suit on the note, and told him he had not treated me right; I told him I did not know that he held the note; that I thought it had been settled long ago; said I, ' You ought to have come and seen me; you know I forbade you buying the note.' Turley said he had no confidence in Ott, and he rather apologized for suing without giving me notice."

The above statement showed the facts of the case, as they were substantially proved on the trial, and we think the appellant, by his own showing, is liable. He became a maker of

the note with a full knowledge of the facts, and, in doing so, made himself liable as such for the amount due on the note at the time he signed it, and not merely for the hundred dollars for which the note was pledged. The purchase of the note afterwards by the appellee does not affect the rights or the obligation of the appellant. The appellee might have maintained his suit on the note merely as the holder as collateral security for the loan, and, as against the appellant as maker, recovered the whole amount due upon it. The question raised by the appellant, whether the pledgee could purchase the note of the pledgor, is not one which will aid him in this case. His liability on the note as maker would be the same to either one who was the legal holder of the note. *Jones* v. *Hawkins*, 17 Ind. 550 ; *Smith* v. *Hunter*, 33 Ind. 106.

The judgment is affirmed.